OPINION
Plaintiff-appellant James C. McLendon (hereinafter "husband") appeals the December 7, 1998 Judgment Entry entered by the Muskingum County Court of Common Pleas, overruling his objections to the magistrate's October 24, 1997 Decision, and approving and adopting the Decision as the trial court's judgment. Defendant-appellee is Barbara E. McLendon (hereinafter "wife").
 STATEMENT OF THE CASE
Husband and wife were married on July 10, 1965. Four children were born as issued of said union, all of whom are now emancipated. On November 26, 1996, husband filed a Complaint for Divorce in the Muskingum County Court of Common Pleas. On January 7, 1997, wife filed an Answer and Counterclaim for Divorce. The matter proceeded to trial before a magistrate on August 27 and 28, 1997. The magistrate issued a decision on October 24, 1997. On November 7, 1997, husband filed objections to this decision and a request for a transcript. Wife filed her response on November 14, 1997. Via Judgment Entry dated November 20, 1997, the trial court overruled husband's objections finding the transcript was not timely filed. The trial court issued its Judgment Entry/Decree of Divorce on February 6, 1998. Husband filed a timely notice of appeal to this Court. In his appeal, husband raised five assignments of error, including error in the trial court's dismissing his objections to the magistrate's decision for failure to timely file a transcript. Via Opinion filed October 7, 1998, this Court reversed, finding the trial court abused its discretion in overruling husband's objections to the Magistrate's Decision when only thirteen days had passed between the trial court's entry and husband's filing of the objections and request for transcript. This Court also found it was not reasonable for the trial court to assume the transcript could be prepared in such a short period of time. Upon remand, husband filed a Motion for Leave to Amend Objections on December 4, 1998. Via Judgment Entry dated December 7, 1998, the trial court overruled husband's objections and entered the magistrate's decision as its judgment. Husband filed a Notice of Appeal on January 6, 1999. The trial court issued a Judgment Entry/Decree of Divorce on February 9, 1999. It is from the trial court's December 7, 1998 Judgment Entry husband appeals, raising the following assignments of error:
 I. THE TRIAL COURT COMMITTED REVERSIBLE ERRORS WHEN IT FAILED TO GIVE THE APPELLANT CREDIT FOR AN $82,000 INHERITANCE THE APPELLANT RECEIVED DURING THE COURSE OF THE MARRIAGE AND THEN REINVESTED INTO AN ASSET OF THE MARRIAGE, McLENDON MORTGAGE.
 II. THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT DID NOT GIVE CREDIBLE EVIDENCE TO THE APPELLANT'S EXPERT WITNESS, MIKE LYNCH, C.P.A. AT THE BEGINNING OF THE TRIAL, BOTH APPELLANT AND APPELLEE STIPULATED THE TESTIMONY OF MIKE LYNCH AS AN EXPERT WITNESS. THE APPELLEE AGREED TO USE THE VALUATION OF MIKE LYNCH FOR McLENDON MORTGAGE AS A JOINT FIGURE FOR PRESENTATION TO THE COURT. THE APPELLEE DID NOT PRESENT ANY OTHER EXPERT WITNESS TESTIMONY. THE TRIAL COURT ALSO ERRONEOUSLY CHARACTERIZED THE STATUS OF MIKE LYNCH AS THE ACCOUNTANT FOR McLENDON MORTGAGE WHEN, IN FACT, NO EVIDENCE WAS OFFERED TO THIS POINT. MIKE LYNCH HAS NEVER BEEN, AS OF THE TRIAL OF THIS MATTER, THE ACCOUNTANT FOR McLENDON MORTGAGE, BUT, IN FACT, HAD BEEN THE PERSONAL ACCOUNTANT FOR BOTH THE APPELLANT AND APPELLEE FOR A NUMBER OF YEARS.
 III. THE TRIAL COURT FURTHER COMMITTED REVERSIBLE ERROR WHEN IT DID NOT LIST AS PASSIVE INCOME THE VALUATION OF McLENDON MORTGAGE AS A JOINT MARITAL ASSET. THE PROGRESS OF THE VALUATION OF McLENDON MORTGAGE WAS DUE TO EFFORTS OF THE APPELLANT. THE APPELLANT ALSO IN RECENT YEARS WORKED WITH HIS ADULT CHILDREN AT McLENDON MORTGAGE, AND THE RELATIONSHIP BETWEEN THE APPELLANT AND HIS CHILDREN HAS BEEN STRAINED BECAUSE OF THE INSISTENCE OF THE APPELLEE THAT THE ADULT CHILDREN TESTIFY AT THE TRIAL. THE APPELLEE DID NOT INVEST ANY SEPARATE MONEY IN McLENDON MORTGAGE, ALTHOUGH THROUGHOUT THE MARRIAGE THE APPELLEE HAD SEPARATE PROPERTY AND HER OWN INHERITANCE AVAILABLE FOR THIS PURPOSE. THE APPELLEE FOR SOME TIME HAD NOT MADE ANY WORK CONTRIBUTION TOWARDS McLENDON MORTGAGE, FROM WHICH SHE WAS MORE GREATLY COMPENSATED THAN THE APPELLANT.
 IV. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY AWARDING THE APPELLEE AN EXCESSIVE AMOUNT OF SPOUSAL SUPPORT. THE TRIAL FOUND, THROUGH THE AID OF AN EXPERT WITNESS, THAT THE APPELLEE WAS INTENTIONALLY EMPLOYED, AND THEREFORE CAPABLE OF EARNING AN ANNUAL SALARY OF $20,000.00. BASED ON THE EXPENSES OF THE APPELLEE AND HER PROJECTED EARNING ABILITY, ALONG WITH THE EXPENSES AND HEALTH OF THE APPELLANT, THE MONTHLY ORDER OF $1,100.00 WOULD BE EXCESSIVE.
 V. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY NOT ALLOWING THE APPELLANT TO FILE AN AMENDED OBJECTION TO THE MAGISTRATE'S DECISION. WHEN THE ORIGINAL OBJECTION WAS FILED, THE APPELLANT DID NOT HAVE THE BENEFIT OF THE USE OF A TRANSCRIPT TO PREPARE HIS OBJECTION. THE TRIAL COURT ORIGINALLY DISMISSED THE OBJECTION FOR NOT HAVING FILED A TRANSCRIPT WITH SAID OBJECTION. THIS APPELLATE COURT RULED THAT SAID ACTION WAS AN ABUSE OF DISCRETION, OVERRULING SAID DECISION AND REMANDING THE CASE FOR RULING ON APPELLANT'S OBJECTION. APPELLANT THEN FILED TO AMEND HIS OBJECTION, WHICH THE TRIAL COURT FIRST OVERRULED THE OBJECTIONS FILED BY THE APPELLANT, THEN DENIED APPELLANT'S MOTION TO AMEND. SAID ACTION AGAIN IS AN ABUSE OF DISCRETION, AND AS SUCH SHOULD BE OVERRULED.
Any facts relevant to our discussion of husband's assignments of error shall be contained therein.
 I
In his first assignment of error, husband maintains the trial court erred in failing to find an inheritance he received from his aunt during the course of marriage was separate property. In essence, husband argues the trial court's finding he did not meet his burden of proof as to the traceability of the inheritance is against the manifest weight of the evidence. Pursuant to R.C.3105.171, a trial court must classify property as marital or separate before making an award of such property. When the parties contest whether an asset is marital or separate property, the presumption is that the property is marital, unless proven otherwise. The burden of tracing separate property is upon the party claiming its existence by a preponderance of the evidence. deLevie v. deLevie (1993), 86 Ohio App.3d 531, 536. A determination of traceability is a finding of fact. James v. James (1995), 101 Ohio App.3d 668. A factual finding of the trial court will be reversed only if it is found to be against the manifest weight of the evidence. Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77. Judgments supported by some competent, credible evidence will not be reversed as against the manifest weight of the evidence. Id. at 80. The record in the instant action reveals husband incorporated the McLendon Mortgage Company, of which he is the president and sole shareholder, in 1983. During the marriage, McLendon Mortgage Company loaned money to husband. Husband testified these loans were used to cover family living expenses. On December 10, 1989, husband's aunt, Dorothy Creech, died. Between December, 1989, and March, 1991, husband received two disbursements and an executor's fee, totaling $86,759.93, from his aunt's estate. Although husband claims monies from the inheritance were used to maintain McLendon Mortgage Company's EAGLE, a minimum level of liquid assets required by the federal government for a corporation to qualify as a lending institution, the record provides some evidence which establishes the monies were used to reimburse the corporation for the aforementioned loans. Husband also testified some monies from the inheritance were used to purchase two parcels of real estate from his mother in 1991. The only evidence to support this claim was husband's own testimony. Based upon the foregoing facts and our review of the entire record in this matter, we find the trial court's determination husband failed to trace the inheritance to the EAGLE and/or to the real property purchased from his mother is not against the manifest weight of the evidence. Accordingly, the trial court did not err in failing to credit the inheritance from his aunt as separate property to husband. Furthermore, any fee earned by husband as executor would be earned income and therefore marital property. Husband's first assignment of error is overruled.
 II
In his second assignment of error, husband asserts the trial court erred in failing to give weight to the testimony of Mike Lynch, C.P.A., as an expert witness. The weight to be given a witness' testimony is an issue of credibility. The credibility of any witness is a matter left primarily to the trier of fact, in this case, the trial judge. Simoni v. Simoni (1995), 102 Ohio App.3d 628,634. "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Seasons Coal Co., supra, at 80. Husband argues the trial court's finding Lynch's testimony to be unreliable is erroneous. In support of his assertion, husband explains the parties jointly stipulated to Lynch's qualifications, and not only did wife agree with the valuation performed by Lynch, wife did not offer expert testimony to refute the valuation. Initially, we note the fact wife stipulated to Lynch's qualifications as an expert does not require the trial court to agree with or accept Lynch's opinion. Likewise, the fact wife did not refute Lynch's testimony does not require the trial court to agree with or accept his opinion. Despite husband's protestations to the contrary, the record reveals Mike Lynch has served as the accountant for McLendon Mortgage Company for "close to twenty years." The record also establishes Lynch has been and continues to serve as husband's personal accountant. The trial court is in the best position to assess the credibility of the witnesses and determine the weight to be given to the testimony. The trial court was free to accept or reject all or any part of the witness' testimony. Given Lynch's longtime connection with the corporation and husband, we do not find the trial court erred in finding Lynch's testimony to be unreliable. Husband's second assignment of error is overruled.
 III
In his third assignment of error, husband contends the trial court erred in awarding wife an excessive amount of spousal support. Husband submits the amount of spousal support exceeds the amount of wife's expenses when viewed in light of her potential earning abilities. A review of a trial court's decision relative to spousal support is governed by an abuse of discretion standard. Cherry v. Cherry (1981), 66 Ohio St.2d 348. We cannot substitute our judgment for that of the trial court unless, when considering the totality of the circumstances, the trial court abused its discretion. Holcomb v. Holcomb (1989), 44 Ohio St.3d 128. In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217. We must look at the totality of the circumstances in the case sub judice and determine whether the trial court acted unreasonably, arbitrarily or unconscionably. Pursuant to R.C. 3105.18(C) (1), a trial court must consider certain factors in making determinations of spousal support: (C) (1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:
(a) The income of the parties, from all sources * * *; (b) The relative earning abilities of the parties; (c) The ages and the physical, mental, and emotional conditions of the parties; (d) The retirement benefits of the parties; (e) The duration of the marriage; (f) The extent to which it would be inappropriate for a party, because he will be custodian of a minor child of the marriage, to seek employment outside the home; (g) The standard of living of the parties established during the marriage; (h) The relative extent of education of the parties; (I) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties; (j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party; (k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought; (l) The tax consequences, for each party, of an award of spousal support; (m) The lost income production capacity of either party that resulted from that party's marital responsibilities; (n) Any other factor that the court expressly finds to be relevant and equitable.
Further, trial courts are governed by the standards and guidelines imposed by the Ohio Supreme Court in Kunkle v. Kunkle (1990),51 Ohio St.3d 64, paragraph one of the syllabus: Except in cases involving a marriage of long duration, parties of advanced age or a homemaker-spouse with little opportunity to develop meaningful employment outside the home, where a payee spouse has the resources, ability and potential to be self-supporting, an award of sustenance alimony should provide for the termination of the award, within a reasonable time and upon a date certain, in order to place a definitive limit upon the parties' rights and responsibilities.
The trial court found wife was voluntarily underemployed. Based upon her past employment history and the testimony of husband's vocational expert, the trial court concluded wife was capable of earning between $15,000 and $20,000/year as a general office worker. The trial court found wife's ordinary and reasonable living expenses to be between $2,350 and $2,450/month. After considering all of the relevant factors, the trial court ordered husband to pay wife spousal support in the amount of $1,100/month. The court retained continuing jurisdiction to modify or terminate the spousal support obligation. In his brief to this Court, husband submits wife's potential income including her spousal support is $33,200/year, which he maintains exceeds the amount wife needs to meet her living expenses. In arriving at this figure, husband utilizes the high end of the trial court's range of wife's earning ability. However, if one were to make the calculations using the low end of the trial court's range, wife would either just meet her living expenses, or not have enough income to meet those expenses. Based on the range of wife's earning ability and on her expenses, we find the trial court did not abuse its discretion in awarding spousal support in the amount of $1,100 per month. Husband's third assignment of error is overruled.
 IV
In his fourth assignment of error, husband argues the trial court erred in failing to include as passive income any increase in the value of McLendon Mortgage Company which resulted from the sole efforts of husband. R.C. 3105.171(A) (3) (a) (iii) defines "marital property" as follows: Except as otherwise provided in this section, all income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of either or both the spouses that occurred during the marriage. "Passive income", which is "income acquired other than as a result of the labor, monetary, or in-kind contribution of either spouse," is "separate property." R.C. 3105.171 (A) (4) and (6) (a) (iii). Because the trial court properly found, and the parties do not dispute, McLendon Mortgage Company is a marital asset, we find R.C. 3105.171 (A) (4) and (6) (a) (iii) are inapplicable and the trial court did not err in failing to list the increase in the value of the McLendon Mortgage Company as passive income. Husband's fourth assignment of error is overruled. V In his final assignment of error, husband submits the trial court erred in failing to allow him to amend his objections to the magistrate's decision after the transcript had been filed. Civ.R. 53, which governs objections to magistrate's reports, neither specifically provides for or prohibits a party's amending previously filed objections. A trial court's decision to permit or deny a party's request to amend objections is reviewed under an abuse of discretion standard, which is set forth supra. When husband filed his Motion for Leave to Amend Objections, he did not provide the trial court with a copy of the amended objections he intended to file or in any way advise the trial court of the substance or nature of the amended objections. Further, husband has not identified for this Court any such information. Upon review of the record, we are unable to conclude the trial court's abused its discretion in failing to allow husband to amend his objections. Husband's final assignment of error is overruled.
The judgment entry of the Muskingum County Court of Common Pleas is affirmed.
By: Hoffman, J. Wise, P.J. and Gwin, J. concur